**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: August 26, 2024
Date Decided: August 27, 2024

John A. Sensing
Tyler E. Cragg
Hannah L. Paxton
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Steven J. Fineman
Travis S. Hunter
Alexandra M. Ewing
Morgan R. Harrison
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Re: *Hub Group, Inc. v. Knoll*, C.A. No. 2024-0471-SG

Dear Counsel:

This Letter Opinion resolves a request for an interlocutory appeal.[1] Before me is an application for certification of an interlocutory appeal (the "Application") of my August 8, 2024 Order (the "Order")[2] that implemented the ruling in my Memorandum Opinion of July 18, 2024 (the "Opinion"),[3] under Supreme Court Rule 42. Upon consideration, I find that the matter did determine a substantive issue of material importance, but that interlocutory appeal is nonetheless inappropriate in consideration of Supreme Court Rule 42.

---

[1] Pl. Hub Gp., Inc.'s Appl. for Certification of an Interlocutory Appeal, Dkt. No. 69 ("Pl. Appl.").
[2] Granted [Proposed] Ord. to Letter to Vice Chancellor Sam Glasscock III from Travis S. Hunter Regarding Submission of Proposed Ord., Dkt. No. 68.
[3] *See Hub Gp., Inc. v. Knoll*, 2024 WL 3453863 (Del. Ch. Jul. 18, 2024).

This matter involves a non-competition, non-solicitation, and confidentiality agreement (the "Agreement") between Hub Group, Inc. ("Plaintiff" or "Hub"), a Delaware corporation that offers transportation and logistics management services, and Christopher Knoll ("Defendant" or "Knoll"), a former Hub employee.[4] Knoll began working for Hub in February 2018.[5] In 2024, Knoll became Senior Vice President of Account Management[6] and executed the Agreement.[7] The Agreement contains three separate restrictive covenant obligations: (1) non-competition (the "Non-Compete"); (2) non-solicitation (the "Non-Solicit"); and (3) confidentiality ("Confidentiality" and collectively with the Non-Compete and Non-Solicit, the "Restrictive Covenants").[8] On April 26, 2024, Knoll accepted an offer from Logistics Insight Corp. ("Linc"), a wholly-owned logistics operating subsidiary of Universal Logistics Holding, Inc. ("Universal"), to be the Chief Commercial Officer of Linc.[9] Hub seeks permanent injunctive relief, barring Knoll from employment with Linc pursuant to the terms of the Agreement.[10]

---

[4] Verified Compl. ¶¶ 8–9, 13, 29, Dkt. No. 1 ("Compl.").
[5] Transmittal Aff. of John A. Sensing Supp. Pl.'s Opening Br. Supp. Mot. for Prelim. Inj. ("Sensing Aff."), Ex. 1 at 21:5–14, Dkt. No. 46 ("Knoll Dep.").
[6] *Id.* at 99:1–5.
[7] Sensing Aff., Ex. 5, Dkt. No. 46 (the "Agreement").
[8] *Id.* §§ 3–6.
[9] Sensing Aff., Exs. 39, 47, Dkt. No. 47; Compl. ¶¶ 29–30.
[10] Compl. ¶ 69.

On May 3, 2024, Hub filed the operative complaint ("Complaint"), a motion seeking a temporary restraining order, and a motion to expedite proceedings.[11] The matter was expedited on May 14, 2024.[12] I granted the parties' proposed order resolving the motion seeking a temporary restraining order ("TRO Motion") on May 20, 2024.[13] Hub filed a motion seeking a preliminary injunction ("PI Motion") on June 13, 2024.[14] I heard oral argument on the motion on June 26, 2024.[15] On July 18, 2024, I issued the Opinion.[16] On August 8, 2024, I granted the Order in accordance with the Opinion.[17]

In the Opinion, I denied Hub's PI Motion that sought to enjoin Knoll from working for Linc in a manner that Hub maintained is prohibited by the Non-Compete.[18] At oral argument, the parties agreed that whether Hub's request for a preliminary injunction was granted hinged on the enforceability of the Non-Compete; as such, I limited my analysis to that issue.[19] I noted that to the extent that Hub seeks to enforce the Non-Solicit and Confidentiality covenants, the Opinion

---

[11] *See* Compl.; Pl.'s Mot. for a TRO, Dkt. No. 1; Pl.'s Mot. to Expedite Proc., Dkt. No. 1.
[12] *See* Tr. of 5-14-2024 Hr'g on Pl.'s Mot. to Expedite and for a TRO, Dkt. No. 45.
[13] *See* Granted (Stipulation and (Proposed) Ord. Resolving Mot. for TRO), Dkt. No. 11.
[14] *See* Pl. Hub Gp., Inc.'s Mot. for Prelim. Inj., Dkt. No. 46.
[15] Prelim. Inj. Hr'g before Vice Chancellor Sam Glasscock dated 6.26.24, Dkt. No. 60.
[16] *Hub Gp.*, 2024 WL 3453863.
[17] Granted ([Proposed] Ord. to Letter to Vice Chancellor Sam Glasscock III from Travis S. Hunter Regarding Submission of Proposed Ord.), Dkt. No. 68.
[18] *Hub Gp.*, 2024 WL 3453863, at *2.
[19] *Id.* at *6.

3

does not decide the enforceability of those covenants against Knoll, nor does it preclude Hub from seeking relief related to those covenants.[20]

Under the preliminary injunction standard of review, I denied Hub's PI Motion because Hub failed to demonstrate a reasonable probability of success on the merits for the enforceability of the Non-Compete.[21] I determined that by its plain terms, each of the three limiting provisions that Hub argued were narrowly tailored to Knoll's duties and responsibilities, are broad and do not effectively limit the general clause of the Non-Compete.[22] In considering the Non-Compete as a whole in conjunction with the Agreement's purported binding effect upon Knoll and Knoll's "successors, heirs, executors, and representatives," I found that the Non-Compete is broad and unenforceable.[23] While Hub urged me to interpret the Non-Compete limiting provisions narrowly, I determined that the obvious mal-incentive, and the equitable principles embodied in the doctrine of *contra proferentem,* weigh against such an interpretation.[24] Accordingly, I found it improbable that Hub will be able to enforce the Non-Compete after a trial on the merits and denied Hub's PI Motion.[25]

---

[20] *Id.* at *5.
[21] *Id.* at *13.
[22] *Id.* at *8–13.
[23] *Id.* at *12.
[24] *Id.*
[25] *Id.* at *13.

Supreme Court Rule 42 ("Rule 42") governs the certification of an interlocutory appeal.[26] It states that "no interlocutory appeal will be certified by the trial court or accepted by [the Supreme Court] unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[27] If the substantial issue of material importance requirement is met, the trial court must consider the following factors and "identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice:"[28]

> (A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.[29]

This standard exists because piecemeal appeals are inefficient and highly disfavored by our Supreme Court.[30]

---

[26] Supr. Ct. R. 42.
[27] Supr. Ct. R. 42(b)(i).
[28] Supr. Ct. R. 42(b)(iii).
[29] *Id.*
[30] *See, e.g.*, *Sunder Energy, LLC v. Jackson*, 2023 WL 8868407, at *4 (De. Ch. Dec. 22, 2023).

In its Application, Hub argues that the Order decides a substantial issue of material importance and several of the criteria in Rule 42 are met because interlocutory review would: (i) resolve a conflict among precedents; (ii) potentially end the litigation; and (iii) serve considerations of justice.[31]

In reviewing Rule 42, I find that the Order is not suitable for interlocutory appeal. Hub argues that the determinations that the Non-Compete is unenforceable and that blue-penciling is not appropriate are substantial issues of material importance.[32] I agree that both determinations in my Opinion address substantial issues, but I find that these determinations are not suitable for interlocutory appeal pursuant to Rule 42 factors. My analysis follows below.

Hub first argues that its first factor—"decisions of the trial courts are conflicting"—weighs in favor of an interlocutory appeal because the Supreme Court has not addressed the recent trend in Court of Chancery decisions of striking down restrictive covenants for overbreadth while prior decisions enforced non-competes and narrowed their restrictions.[33] Strictly speaking, this is not an argument that the trial courts' decisions are in conflict; instead, it is an argument that our Supreme Court should address the "recent trend" Hub apprehends is occurring, in which the

---

[31] Pl. Appl. ¶¶ 16–17.

[32] *Id.* ¶¶ 18–21. Hub relies on *Sunder Energy*, 2023 WL 8868407, at *5 wherein the Court ruled in an injunction decision that Sunder Energy could not rely on restrictive covenants because they were unreasonably broad and refused to blue-pencil the covenants; the Court determined that both rulings addressed substantial issues. *Id.* ¶ 21.

[33] *Id.* ¶¶ 23–26.

trial court applies discretion against judicial editing of contractual provisions to create enforceable non-compete agreements. I find this argument unpersuasive; the Supreme Court can address this issue after final judgment is entered in this action. In *Sunder Energy, LLC v. Jackson*, Sunder Energy made an argument nearly identical to Hub's about the "recent trend" on restrictive covenants and how it favors interlocutory appeal.[34] As the Court stated in *Sunder Energy*, the Supreme Court can provide guidance on the issue of the blue-penciling and over-breadth of restrictive covenants "just as easily in an appeal from final judgment."[35] Accordingly, if there are any conflicts between the recent Court of Chancery decisions and prior decisions, the conflicts need not be addressed in an interlocutory appeal prior to final judgment.

Hub next argues that the fact that the Order's appeal may terminate the litigation weighs in favor of an interlocutory appeal.[36] I do not agree.

To support its assertion, Hub argues that clarity regarding the enforceability of the Non-Compete would "likely bring a quick end to the litigation."[37] My preliminary decisions on the Non-Compete, whatever the outcome of any appeal, does not end the litigation, however. As I noted in the Opinion, the parties agreed

---

[34] *Id.*; *Sunder Energy,* 2023 WL 8868407, at *15.
[35] *Sunder Energy,* 2023 WL 8868407, at *15.
[36] Pl. Appl. ¶ 27.
[37] *Id.*

that whether Hub's request for a *preliminary injunction* is granted hinges on the enforceability of the Non-Compete;[38] but the Opinion does not determine other issues.[39] Furthermore, as the Court discussed in *Sunder Energy*, even if the Delaware Supreme Court were to reverse the preliminary injunction decision and uphold the Non-Compete, additional issues regarding the issuance of a *permanent injunction*, balancing the hardships, causation, and damages remain.[40] Accordingly, this factor does not weigh in favor of certifying an interlocutory appeal.

Hub lastly argues that an appeal would "serve considerations of justice," a factor that (per Hub) weighs in favor of interlocutory appeal. Hub again relies on *Sunder Energy*.[41] I find Hub's reliance unpersuasive, since Hub still maintains the ability to pursue litigation for other restrictive covenants in its Agreement. In *Sunder Energy*, Sunder Energy had an LLC agreement that included broad restrictive covenants.[42] After a co-founder left Sunder Energy to join a competitor, Sunder Energy filed a complaint against the co-founder for breach of contract under two restrictive covenants within the LLC agreement and against other related defendants for tortious interference.[43] The Court's rulings on Sunder Energy's motion for

---

[38] *Hub Gp.*, 2024 WL 3453863, at *6.

[39] For instance, it does not decide the enforceability of the Non-Solicit and Confidentiality covenants against Knoll. *Id.* at *5. To the extent that Hub seeks to enforce the Non-Solicit and Confidentiality covenants, these issues remain to be litigated. *Id.*

[40] *Sunder Energy*, 2023 WL 8868407, at *16.

[41] Pl. Appl. ¶¶ 28–30.

[42] *Sunder Energy*, 2023 WL 8868407, at *2.

[43] *See Sunder Energy, LLC v. Jackson*, 305 A.3d 723 (Del. Ch. 2023).

preliminary injunction effectively rejected both Sunder Energy's right to enforce any of its restrictive covenants against the co-founder and its ability to sue the other defendants for tortious interference.[44] Accordingly, the Court recommended the Delaware Supreme Court to accept the interlocutory appeal because the rulings were "akin to a decision granting a motion to dismiss, which results in a final judgment that gives rise to an immediate appeal."[45] Although its preliminary injunction decision did not reject Sunder Energy's claims based on theories limited to the co-founder's pre-resignation conduct, the Court determined that the trial would be very different than the case that Sunder Energy wants to pursue in terms of factual, expert, and legal issues.[46]

Here, the Opinion on Hub's motion for a preliminary injunction differs in fact from the decision on Sunder Energy's motion for a preliminary injunction. In the Opinion, I only made a determination on the enforceability of the Non-Compete and I did not make any determinations on the other Restrictive Covenants.[47] Hub avers that Knoll's employment at Linc will breach the Confidentiality covenant and that enforcement of the Non-Solicit covenant is warranted.[48] If Hub chooses to pursue claims for the breach of the Non-Solicit and Confidentiality covenants, the trial will

---

[44] *Sunder Energy*, 2023 WL 8868407, at *12.
[45] *Id.*
[46] *See id.* at *13–15.
[47] *See Hub Gp.*, 2024 WL 3453863, at *5.
[48] Compl. ¶ 64; Pl. Hub Gp., Inc.'s Reply Br. In Further Supp. of its Mot. for Prelim. Inj. 32–33, Dkt. No. 57.

be similar to the case that Hub wants to pursue under its Complaint in terms of factual, expert, and legal issues. Hub's claims for breach of the Restrictive Covenants, unlike Sunder Energy's claims, can still go forward. Accordingly, this factor does not weigh in favor of certifying an interlocutory appeal.

Rule 42 requires the trial court to engage in a balancing test to determine whether interlocutory review is appropriate by considering the eight factors listed in Rule 42 and its "own assessment of the most efficient and just schedule to resolve the case."[49] In weighing the three factors discussed above against the inefficiencies of piecemeal litigation, I determine that the Order is not suitable for interlocutory appeal under Rule 42, and for that reason, I decline to certify the appeal.

I have attached an Order in the form mandated by Rule 42(c)(4) and Official Form L.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

[49] Supr. Ct. R. 42(b)(iii).

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**
**IN AND FOR SUSSEX COUNTY**

| | |
|---|---|
| HUB GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2024-0471-SG |
| | ) |
| CHRISTOPHER KNOLL, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING LEAVE TO APPEAL FROM INTERLOCUTORY ORDER

This 27th day of August, 2024, the Plaintiff Hub Group, Inc. having made application under Rule 42 of the Supreme Court for an order certifying an appeal from the interlocutory order of this Court dated August 8, 2024; and the Court having found that such order determines a substantial issue of material importance that merits appellate review before a final judgment, but that none of qualifying criteria of Supreme Court Rule 42(b)(iii) applies;

IT IS SO ORDERED that the certification of the Court's order of August 8, 2024, to the Supreme Court of the State of Delaware for disposition in accordance with Rule 42 of that Court is DENIED.

/s/ Sam Glasscock III
Vice Chancellor